UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| NEIL WHITNEY, Personally and as Parent and as Guardian for Caleb Whitney, and PATRICIA WHITNEY, Personally and as Parent and as Guardian for Caleb Whitney,<br><br>    Plaintiffs,<br><br>    v.<br><br>NATURE'S WAY PEST CONTROL, INC.,<br><br>    Defendant. | Case No. 5:16-cv-88 |

**OPINION AND ORDER**
**(Docs. 8, 11)**

Plaintiffs are homeowners in Rutland, Vermont. Defendant is an extermination company. Plaintiffs have filed suit following prolonged efforts by Defendant to rid their home of bedbugs. Pending before the court is Defendant's Motion to Dismiss Count III of Plaintiffs' Complaint (Doc. 8), which alleges violations of the Vermont Consumer Protection Act ("VCPA"), 9 V.S.A. § 2451 *et seq.*[1] The motion seeks dismissal for lack of standing and lack of sufficient specificity in pleading. Plaintiffs have filed a Motion to Amend the Complaint (Doc. 11.)

I.      **Motion to Amend the Complaint**

After Defendant moved to dismiss the complaint, Plaintiffs moved to amend. The proposed amendments respond to the contention that Plaintiffs failed to plead with the requisite degree of specificity.

Federal Rule of Civil Procedure 15(a)(2), provides that "[t]he court should freely give leave [to amend] when justice so requires." "The Second Circuit has held that a motion to amend should be denied 'only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'"

---

[1] Prior to May 2012, this statute was known as the Vermont Consumer Fraud Act.

1

*Balentine v. Tremblay*, No. 5:11-cv-196, 2012 WL 1999859, at *3 (D. Vt. June 4, 2012) (quoting *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)).  Here, the motion to amend does not implicate any of these concerns.  The amendments are not unduly prejudicial, as litigation is in its very early stages and the amendments are based on the same facts and claims as the original complaint.  There is also no indication of bad faith or undue delay.  As discussed below, the proposed amended complaint is also sufficient to withstand a 12(b)(6) motion to dismiss for failure to state a claim, and is therefore not futile.  *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

The court therefore grants Plaintiffs' Motion to Amend Complaint (Doc. 11).  For purposes of considering Defendant's Motion to Dismiss (Doc. 8), all allegations of the amended complaint are accepted as true.

## II.     Facts

Plaintiffs own their own home in Rutland, Vermont.  They live with their disabled son who is a young adult.  They also accept the placement of foster children in their home.  These placements occur with the support and supervision of the Vermont Department for Children and Families ("DCF").

In April 2012, Plaintiffs began to experience problems with bedbugs in their home.  The insects were introduced into the home by a foster child.  DCF initially rejected Plaintiffs' request for payment of a professional exterminator.  The problems persisted and Plaintiff Patricia Whitney wrote to DCF in June 2012 requesting that the agency hire an exterminator.  DCF responded by authorizing Plaintiffs to obtain two estimates for submission to DCF.

Mrs. Whitney called Defendant Nature's Way Pest Control, Inc. ("Nature's Way"), an extermination company based in Glens Falls, New York.  Defendant's sales representative visited the Plaintiffs' home.  He stated that the company was experienced in dealing effectively with bedbugs and that the insects would be eradicated in the first thirty days of treatment.  He also stated that the company would conduct follow-up visits to ensure that the bedbugs did not return.  Mrs. Whitney obtained a written estimate for $2,700 for a one-year program and submitted it to DCF.  DCF accepted the estimate and entered into an agreement with Defendant to eradicate the infestation.

Between July 2012 and April 2013, Defendant tried repeatedly to eradicate the bedbugs from Plaintiffs' home without success. A subsequent investigation by the Vermont Agency of Agriculture revealed that Defendant had committed multiple violations of the Vermont Pesticide Regulations, including providing Plaintiffs with inaccurate invoices.

## III. Analysis

### A. Standing

Defendant's motion presents a single primary issue: does payment for the extermination service by DCF bar Plaintiffs from bringing suit as consumers under the VCPA?

Because the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*, does not provide for a private cause of action, all states have adopted consumer protection laws which supplement federal enforcement actions with private lawsuits. The VCPA opens with a broad statement of these goals:

> The purpose of this chapter is to complement the enforcement of federal statutes and decisions governing unfair methods of competition, unfair or deceptive acts or practices, and anti-competitive practices in order to protect the public and to encourage fair and honest competition.

9 V.S.A. § 2451.

The VCPA provides that any "unfair or deceptive acts or practices in commerce are hereby declared unlawful," *id.* at § 2453(a), and authorizes suit by "[a]ny consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices . . . or who sustains damages or injury as a result of any false or fraudulent representations or practices." *Id.* at § 2461(b). The VCPA defines "consumers" as "[a]ny person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale . . . but for his or her use or benefit or the use or benefit of a member of his or her household." *Id.* at § 2451a(a).

In this case, Mrs. Whitney contacted Nature's Way, showed them through the house, and requested an estimate from them. She sent the estimate to DCF in an ultimately successful effort to persuade DCF to pay the bill. The alleged misrepresentations occurred by Defendant's representative during the initial sales visit to the Whitneys' home. (Doc. 11-1 at ¶¶ 11–11C.)

3

After DCF agreed to cover the cost of Defendant's extermination services, it entered into an agreement for the provision of services to the Whitneys. The court does not agree with Defendant that the issue of who paid for the service—essentially a question of privity—bars Plaintiffs' cause of action.

The Vermont Supreme Court has consistently expanded the VCPA to cover a broad variety of transactions, including cases in which there was no contract or agreement between the parties. In *Poulin v. Ford Motor Co.*, 147 Vt. 120, 513 A.2d 1168 (1986), both an automobile dealer and manufacturer were held liable under the VCPA for misrepresentations about the rarity and value of a particular vehicle even though there was no sale by the manufacturer to the customer. Similarly, in *Carter v. Gugliuzzi*, 168 Vt. 48, 51–53, 716 A.2d 17, 21–22 (1998), a real estate broker was held liable under the VCPA as the "seller" of a home even though the broker never owned the property. Instead, the broker was held liable for making deceptive statements which induced the sale, even though there was no privity between the broker and the aggrieved party. *See id.*

More recently, in *Elkins v. Microsoft Corp.*, 174 Vt. 328, 817 A.2d 9 (2002), the Vermont Supreme Court considered whether an "indirect purchaser" could sue under the VCPA. The plaintiff purchased a personal computer with a Microsoft operating system already installed. *See id.* at 329, 817 A.2d at 11. The plaintiff claimed that the cost of his computer was unfairly increased by the unfair use of monopoly power. *See id.* The Vermont Supreme Court held that the VCPA's definition of "consumer" imposes no privity requirement limiting the application of the act to retailers who sell directly to customers. *See id.* at 330–31, 817 A.2d at 12–13 (citing 9 V.S.A. § 2451a(a)). The decision highlighted the remedial purpose of the VCPA and the clear intent of the Vermont legislature to provide a remedy with "as broad a reach as possible in order to best protect consumers against unfair trade practices." *Id.* at 331–32, 817 A.2d at 13–14. Both the VCPA's definition of the plaintiff-consumer as "*any* person who purchases . . . goods or services," and the definition of the potential defendant as "seller, solicitor, or *other violator*," reinforced the court's view of an expansive cause of action available to all victims of deceptive business practices. *See id.* at 330–31, 817 A.2d at 12–13 (citing 9. V.S.A. §§ 2451a(a), 2461(b)).

In following the lead of these three cases, the court notes that here, as in *Carter* and *Poulin*, Defendant's statements induced the formation of the contract. As in *Elkins*, that contract

4

was not between Plaintiffs and Defendant. Instead, DCF, an intermediary, agreed to pay the bill. The interjection of a third party—either the manufacturer of the computer in *Elkins* or the third party source of payment in this case—does not alter the protection afforded by the VCPA to consumers of goods or services marketed through means of false statements.

As the Vermont Supreme Court observed in *Elkins,* both the phrase "any consumer" in defining potential plaintiffs and the phrase "seller, solicitor, or other violator" demonstrate the intent of the legislature to extend the scope of the private cause of action to parties not in contractual privity. *See id.* In this case, Plaintiffs were consumers of the extermination services since they selected Nature's Way, met with the sales representative, negotiated a price, and obtained third-party payment for the services that were then provided within their home. Similarly, Defendant was a solicitor because its representative met with Plaintiffs and made promises about the success of its offered services. This court will follow the Vermont Supreme Court in interpreting the VCPA in an expansive, remedial manner, which affords maximum protection to individuals victimized by unfair or deceptive business practices.

### B.   Pleading Standard

Defendant also seeks dismissal on the ground that the complaint does not plead fraud with sufficient specificity under Rule 9(b) of the Federal Rules of Civil Procedure. However, the court finds that Rule 8, not Rule 9, provides the standard of pleading required under the VCPA.

In *Poulin*, the Vermont Supreme Court rejected the defendants' claim that the heightened standards for proof of common law fraud applied to consumer fraud claims under the VCPA. *See* 147 Vt. at 125–26, 513 A.2d at 1172 ("The purpose of our Consumer Fraud Act is to protect consumers by adding a claim for relief that is easier to establish than is common law fraud. To require the higher degree of proof would frustrate the legislative intent." (internal quotation marks and citation omitted)). The court held that VCPA claims are therefore governed by the preponderance-of-the-evidence standard of proof that is applicable to most civil claims, not the heightened "clear and convincing" standard required in common law fraud cases. *See id.*

Although *Poulin* addresses the burden of proof rather than the standard for pleading, subsequent federal case law makes clear that in pleading, as well as in proof, the mere use of the word "fraud" in a statute does not mean that heightened standards of specificity are required.

*See Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 671–72 (D. Vt. 2012) ("It is likewise not likely that the Vermont legislature intended to require a heightened pleading standard for claims for relief under the VC[P]A."). The Second Circuit has reached the same conclusion with respect to New York's version of the VCPA. *See Pelman ex rel Pelman v. McDonald's Corp.*, 396 F.3d 508, 512 (2d Cir. 2005) ("Additionally, because [the New York statute] extends well beyond common-law fraud to cover a broad range of deceptive practices and because a private action under [the statute] does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under [the statute] is not subject to the pleading-with-particularity requirements of Rule 9(b), . . . but need only meet the . . . requirements of Rule 8(a)." (citations omitted)).[2]

The amended complaint clearly meets the plausibility requirements of Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Here, the amended complaint alleges specific statements Defendant made about the success and efficacy of its services. This is sufficient for purposes of pleading a claim under the VCPA.

---

[2] The court reached a contrary conclusion in *Ciccotelli v. Deutsche Bank AG*, Case No. 2:15-cv-105, 2016 WL 2588169, at *2–3 (D. Vt. May 4, 2016). In that decision, the court cited *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015) as a basis for applying Rule 9(b) and not Rule 8 to a complaint alleging a violation of the VCPA. However, *Fin. Guar. Ins.* was a common law fraud case, not a consumer fraud case, and provides little guidance to the pleading standard for a VCPA claim.

## IV.    Conclusion

Plaintiffs' Motion to Amend Complaint (Doc. 11) is GRANTED.  Defendant's Motion to Dismiss Count III of Plaintiffs' Complaint (Doc. 8) is DENIED.

Dated at Rutland, in the District of Vermont, this 6th day of July, 2016.

_____
Geoffrey W. Crawford, Judge
United States District Court